UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>  )<br>  Plaintiff,  )<br>  )<br>  v.  )<br>  )<br>HARRISON B. SULFRIDGE,  )<br>  )<br>  Defendant.  ) | No. 6:13-CR-20-GFVT-HAI-19<br><br>RECOMMENDED DISPOSITION |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The Court, on referral, considers reported supervised release violations by Defendant Harrison B. Sulfridge. *See* D.E. 1290 at 2. District Judge Van Tatenhove entered a judgment against Defendant on May 29, 2014, following a guilty plea to conspiracy to manufacture fifty grams or more of a methamphetamine mixture, a violation of 21 U.S.C. § 846. D.E. 635. Defendant was originally sentenced to fifty-seven months of imprisonment and a four-year term of supervised release. *Id.* at 2–3. On August 28, 2015, District Judge Van Tatenhove reduced Defendant's sentence to forty-six months of imprisonment pursuant to 18 U.S.C. § 3582(c)(2). D.E. 979.

Defendant was released from custody and began his four-year term of supervised release on October 21, 2016. On February 12, 2019, District Judge Van Tatenhove approved a form Prob 12B, Request for Modifying the Conditions or Term of Supervision with Consent of the Offender, adding a condition of mental health counseling at the discretion of the probation officer. The modification was requested by the United States Probation Office ("USPO") after Defendant's admitted use of methamphetamine.

On August 1, 2019, the USPO issued the Supervised Release Violation Report ("the Report") that initiated these proceedings and secured an arrest warrant on August 12, 2019. Defendant was arrested on August 16, 2019. The Report charges Defendant with two violations stemming from a meth positive via laboratory testing of a urine sample he provided on July 18, 2019. Violation #1 alleges that Defendant violated the condition requiring that he refrain from the use and possession of any controlled substance, except as prescribed by a physician. This is a Grade C violation. Violation #2 alleges that Defendant violated the condition requiring that he not commit another federal, state, or local crime based on his criminal history and the possession of methamphetamine, which is a violation of 21 U.S.C. § 844(a), Possession of a Controlled Substance, and a Class E felony. This is a Grade B violation.

I.

The Court conducted an initial appearance pursuant to Federal Rule of Criminal Procedure 32.1 on August 19, 2019. D.E. 1292. During the hearing, Defendant made a knowing, voluntary, and intelligent waiver of his right to a preliminary hearing. *Id.* At that time, the United States made an oral motion for detention; Defendant did not argue for release. *Id.* Based on the heavy defense burden under 18 U.S.C. § 3143(a), the Court found detention was required. *Id.*

At the final hearing on September 5, 2019, Defendant was afforded all rights under Rule 32.1 and 18 U.S.C. § 3583. D.E. 1297. Defendant waived a formal hearing and stipulated to the violations set forth in the Report. *Id.* The Court found Defendant to be competent to stipulate to the violations and that the stipulation was knowingly, voluntarily, and intelligently made. *Id.* The Court also found the stipulation to be consistent with the advice of Defendant's counsel. *Id.*

Of course, the Court must find "by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3); *see also United States v.*

*Cofield*, 233 F.3d 405, 406 (6th Cir. 2000) ("In order to revoke supervised release, the sentencing court must find by a preponderance of the evidence that a defendant has violated a condition of his supervised release."). Defendant's stipulation permits the Court to find that he engaged in conduct that is a Grade B violation under the Guidelines. *See* U.S.S.G. § 7B1.1(a)(2).

During the sentencing portion of the final hearing, counsel for Defendant called Officer Nicholas Greiwe to testify. On direct examination by the defense, Officer Greiwe testified that he had been supervising Defendant since his release in October 2016. He further testified that Defendant was unable to participate in RDAP during his incarceration due to his literacy issues, as reading and writing are integral to the successful completion of the program. He also testified that Defendant had been compliant with the conditions of his release for twenty-eight months, up until the positive drug screen in February 2019. He testified that he had recommended Defendant for mental health treatment following the positive drug screen in February 2019 because he believed Defendant's drug use stemmed from Defendant's anxiety and depression.

On cross-examination by the government, Officer Greiwe testified that he had subjected Defendant to regular drug screens throughout his time under supervision. He further testified that, following the positive drug screen in February 2019, Defendant initially denied any drug use, but, upon being confronted by Officer Greiwe after the lab results were received, Defendant admitted his methamphetamine use. Following the positive drug screen in July 2019, Defendant denied the use of methamphetamine and, despite his stipulation at the hearing, had never admitted to the USPO that he had used methamphetamine prior to that drug screen.

After Officer Greiwe's testimony, the parties presented their recommendations as to the appropriate term of imprisonment and supervised release. The government argued for an eight-month term of incarceration followed by two years of supervised release. Counsel for Defendant

argued for a below-Guidelines Range sentence of time served with a two-year term of supervised release to follow.

The government's argument emphasized the nature and circumstances of the original offense and the relationship to Defendant's present drug use, the need to deter criminal conduct and protect the public, and the breach of the Court's trust. Concerning the nature and circumstances of the original offense, the government noted that it was a methamphetamine offense, that Defendant's role in the conspiracy was to produce the methamphetamine, and that Defendant's present drug of abuse is methamphetamine. The government pointed out the concern that Defendant's drug use would lead him back into the trafficking of methamphetamine, as well as the inherent dangerousness of methamphetamine use. Regarding the need to deter criminal conduct and protect the public, the government indicated that there is a clear nexus between Defendant's use of methamphetamine and his involvement in other criminal conduct. As to the breach of the Court's trust, the government emphasized Defendant's dishonesty in his failure to admit to the methamphetamine use. The government characterized this dishonesty as significant and requiring a significant imprisonment term. The government stated that supervised release would be beneficial to Defendant as he had demonstrated an ability to be compliant with conditions and a desire to better himself. The government also recommended that a condition that Defendant complete inpatient treatment upon his release from custody be imposed.

Defense counsel's argument emphasized Defendant's history and characteristics, and the necessity of additional training and treatment. As to Defendant's history and characteristics, counsel noted that Defendant's issues with drug abuse did not occur until around the age of thirty-four after Defendant suffered a severe leg injury which required significant repair. Counsel also highlighted Defendant's work history and that he has been a hard worker his entire life. Counsel

4

further indicated that Defendant's present drug abuse was not of the type which negatively affected his responsibilities to his employer or his family. Regarding the need for training and treatment in this case, counsel argued Defendant presently suffers from anxiety, post-traumatic stress disorder, and insomnia. Counsel indicated that the underlying causes for Defendant's post-traumatic stress disorder had never been uncovered due to insufficient time thus far to address it. Counsel also argued that Defendant's lack of reading and writing skills were a hinderance to his productivity in society, and that, if he were to increase his skill levels, he would be empowered and hopefully have less anxiety. As to supervised release, defense counsel agreed that two years is a sufficient amount of time to help Defendant better himself, noting Defendant's compliance prior to the violations and the need for further mental health and drug treatment. Counsel further recommended inpatient treatment upon Defendant's release from incarceration to further address Defendant's mental health and drug abuse.

II.

The Court has evaluated the entire record, including the Supervised Release Violation Report and its accompanying documents, and the sentencing materials from Defendant's underlying judgment. The Court has also considered all of the 18 U.S.C. § 3553(a) factors imported into the § 3583(e) analysis.

Under 18 U.S.C. § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant's conviction pursuant to 21 U.S.C. § 846 is a Class B felony. *See* 21 U.S.C. § 841(b)(1)(B). For a Class B felony, the maximum revocation sentence provided under 18 U.S.C. § 3583 is three years of imprisonment. *See* 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on Defendant's criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438 (6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, such statements 'are merely advisory' and need only be considered by the district court before sentence is imposed.") (internal citation omitted). The Guidelines also instruct that, "[w]here there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade." U.S.S.G. § 7B1.1(b).

Under U.S.S.G. § 7B1.1(a), Defendant's admitted conduct qualifies as a Grade C violation with respect to Violation #1 and a Grade B violation with respect to Violation #2. Given Defendant's criminal history category of one (the category at the time of the original conviction in this District) and a Grade B violation, Defendant's range, under the Revocation Table of Chapter 7, is four to ten months. *See* U.S.S.G. § 7B1.4(a). Both parties agreed to this calculation of the range.

Congress does ***mandate*** revocation in a case of this nature. By statute, the Court must revoke Defendant's release because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession). The Sixth Circuit clearly and repeatedly has equated drug use with drug possession, and Defendant's admitted use in this context undoubtedly results in application of 18 U.S.C. § 3583(g)(1). *See United States v. Hancox*, 49 F.3d 223, 224 (6th Cir. 1995); *see also United States v. Metcalf*, 292 F. App'x 447, 449 n.2 (6th Cir. 2008) ("Mandatory revocation was .

6

. . warranted under § 3583(g)(1), as we have held that use of a controlled substance constitutes possession under that subsection."). The only exception would be if a suitable treatment option, or Defendant's record of involvement in treatment, warranted relief. *See* 18 U.S.C. § 3583(d); *Crace*, 207 F.3d at 835 (holding district court was "required by 18 U.S.C. § 3583(g) to revoke the defendant's term of supervised release upon the defendant's positive drug test and admission of the use of a controlled substance unless defendant could come under the exception in 18 U.S.C. § 3583(d)"). Nothing in the record supports application of the exception.

Based upon a thorough evaluation of the record, the Court will recommend that Defendant's supervision be revoked and that he be sentenced to a four-month term of imprisonment followed by two years of supervised release with required inpatient treatment.

III.

The Court has carefully weighed the nature and circumstances of the original offense. Defendant's role in the conspiracy as a meth cook and teacher of others as to how to cook was significant, and his use of methamphetamine on supervision poses a danger that Defendant will return to trafficking in methamphetamine. The use of methamphetamine also implicates the need to protect the public and deter criminal conduct in that Defendant's use of methamphetamine is inherently dangerous, he poses a risk to the public each time he uses the drug, and commits a new criminal act as well.

The Court recognizes the strong need for treatment in this case, which frames its recommendation of inpatient substance abuse treatment as an additional condition of Defendant's supervised release following his term of imprisonment. While the Court does not usually recommend inpatient treatment when a defendant has not been fully honest with the USPO, it finds an exception here on the basis that Defendant is sufficiently committed to such treatment.

Defendant's illiteracy informs the Court's recommendation that, as an additional condition of supervised release following Defendant's imprisonment, he participate in a program to improve his literacy skills at the discretion of the USPO. The requirement that the Court seek to avoid unwarranted sentencing disparities among defendants with similar records who are found guilty of similar conduct is addressed by a recommended sentence within the Guidelines range.

Finally, the Guidelines suggest that the *primary* wrong in the supervised release context is violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* U.S.S.G. Chp. 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). Defendant's conduct represents a breach of the Court's trust because he used methamphetamine despite the attempts by the USPO and the Court to help Defendant with his addiction. Furthermore, Defendant was dishonest with the USPO regarding his methamphetamine use and only admitted his methamphetamine use to the Court upon his stipulation to the violations. The dishonesty present in this case prevents the Court from recommending a sentence below Defendant's Guidelines Range.

A court may also re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration actually imposed due to the violation. *See* 18 U.S.C. § 3583(b) and (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h). Given the nature of Defendant's convictions pursuant to 18 U.S.C. §§ 841/846 and 3583(h), there is no maximum period of time that Defendant can be placed on supervised release following revocation. Accordingly, the Court recommends that a term of two-years of supervised release be imposed following his term of incarceration. The Court

8

recommends that the conditions of supervised release at Docket Entry 635 be re-imposed, with the added conditions requiring that Defendant participate in, and complete, inpatient substance abuse treatment and, if available, complete a literacy skill improvement program at the direction of the USPO.

IV.

Based on Defendant's admitted conduct, and in consideration of the factors discussed above, the Court **RECOMMENDS**:

(1) That Defendant be found guilty of Violations #1 and #2;

(2) Revocation and imprisonment for a term of four months; and

(3) Two years of supervised release under the conditions contained in Defendant's judgment at Docket Entry 635, with the added conditions that Defendant complete inpatient drug abuse treatment as directed by the USPO, and, to the extent available, complete a literacy skill improvement program, as directed by the USPO. The USPO shall attempt, in advance of Defendant's release, to arrange substance abuse treatment at a facility of its choosing and assess Defendant for continued outpatient treatment following the inpatient program.

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. D.E. 1297. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on District Judge Van Tatenhove's docket upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within **five** days after being served with a copy of this recommended

9

decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 10th day of September, 2019.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge